A next case called Borlaughten v. Stewart. Nobody wants to argue against you, Mr. Ting. Thank you, your honors. I'm pleased to court. As you know, I am simply James Ting. I represent the people of the state of Illinois. Your honors, the issue on appeal is whether or not the statutory summary suspension of the trial court did not rescind, whether that was the proper action, whether that was against the manifest weight of the evidence. Shortly, a brief citation of the facts on April 6, 2010, a 911 call was placed in which Tina and Bill Warren stated that there was a suspected drunk driver. They were following a red Ford pickup truck. They actually gave the license plate, which they believe was 18 cups. When they were following this car for a lengthy period, several minutes, they showed the course of action throughout the road that the truck was on, and they finally said that he was almost hitting them when he was on the road. Therefore, Detective Larry Knowlton was dispatched, and Mr. Knowlton intercepted the vehicle on the route which the Warrens had stated that the vehicle was on. At the time, Mr. Knowlton, Detective Knowlton apprehended the vehicle. It was traveling on the side of the road, and it was traveling very slow. Detective Knowlton did not see any, per se, traffic violations. Now, the defendant in this brief states two points. One, that the call by the Warrens was anonymous because it was placed on 911, and the officer, Detective Knowlton, did not know the identity of Tina and Bill Warren at the time. And number two, there is no independent corroboration sufficient to give reasonable suspicion to justify a Terry step. Both assertions by the defendant are wrong for the following reasons. First, as for the anonymous nature of the call, granted, Detective Knowlton did not know that the Warrens were the ones who placed the 911 call. But the court in Schaeffer clearly stated that greater weight is given to 911 calls. They should not be seen as anonymous, but rather they should be seen as though in conformity with an informant who was an eyewitness to the event. The reason being is that 911 calls are traceable. It's common knowledge. And because of that, the Schaeffer court noted that someone would not risk criminal charges to make a 911 call of a suspected drunk driver. The court also noted, and I quote, because the Constitution is not a suicide pact, it permits courts to consider exigency and public safety when considering and evaluating the reasonableness of police conduct. The risk to life and safety posed by an intoxicated or erratic driver convinces us that it is a reasonable and therefore constitutional for the police to act on information furnished by an anonymous 911 call without the level of corroboration that would traditionally be necessary to uphold such an action. The Schaeffer court then further noted why 911 calls should not be anonymous and quoted the Ruzynski and the Tiscio courts, in which the Ruzynski court said, a drunk driver is not at all unlike a bomb, and at that point, a mobile one. The Tiscio court also stated that drunk drivers are essentially moving time bombs. We have to appreciate the sensitivity of issues when concerned with intoxicated drivers. Therefore, the defendant's first assertion that the 911 call was anonymous does not hold with the law provided for in Schaeffer and the cases provided for therein. Secondly, there was – while the defendant would have this court believe that there was no corroboration of the facts with the 911 call by the warrants, there was in actuality many facts that were corroborated. The officer, Detective Nolden, identified the make of the car, which was a Ford, on page 35 and 62 of the record, the color of the car, 35 and 62 of the record, which was red, even the license plate, which was 18 cups, and that's on 35 and 62 of the record as well. Now, the defendant made some point in his brief that the actual license plate was actually 18 cups. However, this assertion is misplaced, the reason being, on page 59 of the record, the warrants were behind the defendant's vehicle when he was apprehended. So any mistaken identity claim should not be utilized, given the context of the record. The warrants were there on the scene doing a dutiful and beyond the scope of what a citizen is required to do. They were serving this country by helping an officer aid and protection of the defendant who was drunk driving. Moreover, the warrants provided contemporaneous conclusions as far as where the defendant was driving. Because they predicted the outcome, where he was headed and what he was doing, what routes he was taking, what directions he was taking, this all goes more towards the reliability of the warrants' statements that was corroborated because Detective Nolden apprehended the defendant given the directions by the warrants. Again, this is corroborated information. Now, granted, this is not corroboration in a legality sense. However, again, we must appreciate the sensitivity of an intoxicated driver. Surely, an officer should not have to wait for a drunk driver to hit someone and kill them possibly or himself and involve himself in an accident before they were able to apprehend them. Rather, the standard must be lowered so that the safety of the community, public safety, is upheld by the Constitution. Remember, the epitome that our Founding Fathers wanted for the Fourth Amendment was reasonableness. Surely, in this particular context, it was reasonable to apprehend the defendant before there was a supposed or perceived traffic violation. Moreover, I would point this court specifically to page 30 of the record, where it shows that the defendant was driving slowly on the side of the road at the time Detective Nolden apprehended him. Now, granted, again, this is not illegal per se, but driving slowly on the side of the road after all of the information just given by the warrants on the 911 call adds more reliability and credibility to their call. And I want to specifically point this court to some of the statements that the warrants made to show you the significance of the threat. Let me ask you a question first. Did the warrants – did they ever lose track of the defendant? Absolutely. Did they stay and identify themselves to the arresting officer? Yes, they did. As the 911 caller? Yes, they did. They identified themselves to the officer, as you can find on pages 35 and 36 of the record, and on 59 of the record. And we know that there was no gap between it because they were still on the phone with 911 at the time when Detective Nolden apprehended him. So there was no supposed gap. They lost track of the vehicle. And what they stated during the 911 call is particularly relevant. They said – and I quote – they said the vehicle struck the curb heavily enough where it actually rode up on the curb. They said the vehicle was going to come up onto the sidewalk. Although it did not, it then glanced off the sidewalk and continued northbound. They were visibly shaken by it. They said they just knew the vehicle was going to strike a pedestrian. That testament, that shows clearly that the defendant was a threat to public safety. And given the 911 call's reliability, apparently because it's traceable, and the investigators would not normally call 911 unless there was some type of serious emergent exigent circumstance. And number two, the independent corroboration given by the variety of facts that the warrants gave to Detective Nolden shows that this statutory summary suspension should be upheld and that the trial court's ruling was not against the manifest way to the evidence. Lastly, I would point this court again to case law, which would support the inference that corroboration does not have to be a legal corroboration. In Ewing, a 911 call was made, and the caller stated the model from the route that the car was taken. Nowhere did the caller in the 911 call state that why the defendant was driving drunk, how they knew the defendant was drunk driving. They didn't state that, and yet that was still enough to uphold the DUI arrest that subsequently occurred because of that 911 call. Surely, this case has more factors than the Ewing case, which was already upheld. I'd point this court again to the Schaeffer ruling, and Schaeffer, a Wendy's employee, stated that a gentleman in a green car had just drove through the driveway and was acting erratically as he thought he was drunk. The officer found the car coming out of Wendy's and arrested him. The officer did not see any illegal activity, nor did the officer witness that the defendant was drunk before apprehending the vehicle, the defendant, and putting him in custody. Both Schaeffer and Ewing show factual circumstances that were even less than the circumstances we have here. Therefore, both precedent and common sense, we have a drunk driver in a 911 call. Surely, this is the opportunity where a police officer, as long as they know for sure that that was the vehicle, should at least be able to have an investigatory stop to determine whether or not that 911 call was credible. And again, we have to look at the invasion of privacy here. The defendant's invasion of privacy if he was not drunk is a two-minute step, literally. Are you drunk? They can see pretty clearly. The defendant can give them the license, the way they talk, the way they act, their eyes. All of these factors would clearly show whether the defendant was or was not more likely drunk. So the invasion of privacy to the defendant had he not been drunk is far more minimal than the risk, potentially, to the safety and well-awareness of the public on the roadways, on the curbs, on the sidewalks. This is a case in which the defendant's assertions of anonymous calling and corroboration are both wrong, and it's shown through the precedent and the case law. Your Honors, I have three more questions for you. I thank you very much for your time. I'll see you tomorrow. Thank you, Your Honors. We appreciate your argument. We appreciate the recent counsel. We'll take the case under advisement.